# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ANTHONY ORR,

    Plaintiff,

v.

WATERBURY POLICE DEP'T, ET AL.,

    Defendants.

No. 3:17-cv-788 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO APPOINT COUNSEL

In April 2017, Anthony Orr ("Plaintiff") sued the Waterbury Police Department and three of its employees, Sergeant Daniel Ferrucci, Officer Jeffrey Schmaling, and Officer Shea (together, "Defendants"), in Connecticut Superior Court. Pet. of Removal at 3, ECF No. 1. Mr. Orr claims that Defendants violated his Fourth Amendment protection against unreasonable seizures by arresting him without probable cause, assaulting him during the course of arrest, denying him medical care after the arrest, and maliciously prosecuting him for narcotics offenses, and he sued the officers under 42 U.S.C. § 1983. *Id.* at 7-8. On May 15, 2017, Defendants removed the case to this Court. *Id.* at 3-4.

Mr. Orr now moves for summary judgment on his claims, arguing that there is no genuine issue of material facts with respect to his arrest and subsequent prosecution. Pl.'s Mot. Summ. J., ECF No. 11. Defendants opposed this motion. Defs.' Mem. in Opp'n to Mot. Summ.

J. ("Defs.' Mem."), ECF No. 14; Defs.' Local Rule 56(a)(2) Statement ("Defs.' L.R. 56(a)2 Stmt."), ECF No. 16. Mr. Orr also filed a motion for appointment of *pro bono* counsel. Pl.'s Mot. Appoint Counsel, ECF No. 18.

For the following reasons, Mr. Orr's motion for summary judgment is **DENIED**, and his motion for appointment of counsel is **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On October 6, 2016, Mr. Orr allegedly visited an apartment in Waterbury, Connecticut, that belonged to his friend Markeysha Dennis. Pet. of Removal, Ex. A. ("Compl.") ¶ 1, ECF No. 1. Mr. Orr alleges that he was waiting for Ms. Dennis's boyfriend to arrive and to pay him for dog-walking. *Id.* At one point, Mr. Orr went outside to talk with his girlfriend and another friend, Dudley Epps, and then went back inside the apartment. *Id.* ¶ 16. Mr. Orr alleges that he lit a cigarette and played video games, while waiting for Ms. Dennis's boyfriend to arrive. *Id.* ¶ 1.

That same day, members of the Vice and Intelligence Division and Violent Crimes Unit of the Waterbury Police Department, including Defendants, were granted a search and seizure warrant for the apartment and for the person of Jermaine Robinson. Defs.' Ex. A ("Case Incident Report"), ECF No. 16-1 at 1, 7. Defendants did not have a search and seizure warrant for Mr. Orr. Pl.'s L.R. 56(a)(1) Stmt. ¶ 2. The officers set up surveillance in the area with a view of the front and rear of the apartment. Case Incident Report at 7.

During the surveillance, one of the detectives observed Mr. Robinson walk to the rear of the building and engage in what the detective perceived to be a hand-to-hand drug transaction with individuals in a parked vehicle and then return to the apartment. *Id.* A short time later, surveillance officers observed Mr. Orr exit the same apartment with Mr. Robinson and engage in

another drug transaction with occupants of another parked vehicle. *Id.* at 1, 7-8. Both Mr. Orr and Mr. Robinson then returned to the apartment. *Id.*

The officers then decided to execute the warrant. *Id.* at 8. They approached the front door of the apartment wearing tactical uniforms with "POLICE" clearly displayed. *Id.* The officers knocked and announced their presence, and received no answer. *Id.* They entered the apartment and immediately saw Mr. Robinson stand up from the living room couch and run towards the rear of the apartment. *Id.* Before he reached the door, one officer tackled Mr. Robinson, and another handcuffed him. *Id.* The officers entered the second floor of the apartment, and again announced their presence and stated that they had a search warrant. *Id.* at 9; Compl. ¶¶ 4-5.

Mr. Orr had been sitting on the living room couch when the officers entered. Compl. ¶ 2; Pl.'s L.R. 56(a)(1) Stmt. ¶ 3; Def.'s Ex. A at 2. According to Defendants, as officers chased Mr. Robinson towards the rear of the apartment, Mr. Orr rose from the couch and began to move towards the front door, ignoring Defendant Shea's verbal command to stop, which prompted Defendant Shea to shove him to the floor and place him under arrest. Defs.' Ex. A at 9; Shea Aff. at 2, ECF No. 16-2. Mr. Orr claims, however, that Defendant Shea shoved him off the couch, causing him to fall on the floor of the living room and get hurt. Compl. ¶ 7; *see also* Pl.'s Reply ("I deny receiving any verbal command [from] . . . Shea. I deny moving from my seat"). Mr. Orr claims that he then heard Defendant Ferrucci yell, "[A]rrest them all!" Compl. ¶ 9; Mot. Summ. J. at 2.

After handcuffing Mr. Orr, Defendant Shea discovered a crack pipe on him. Compl. ¶ 10; Pl.'s L.R. 56(a)(1) Stmt. ¶ 6. Although Mr. Orr denies possessing any narcotics at the time, Compl. ¶ 10, Defendants Schmaling and Shea found $150 in cash and two brick-shaped bundles

3

of a brown substance, which later tested positive as heroin, on a small table near the couch where Mr. Orr had been sitting. Schmaling Aff. ¶ 8, ECF No. 16-1; Shea Aff. ¶ 6. In the same room, the officers discovered a glass jar containing a green, plant-like substance, which later tested positive as marijuana. Schmaling Aff. ¶ 9; Shea Aff. ¶ 7. Mr. Orr claims that he had no knowledge of the items discovered in the room. Pl.'s Reply at 3.

After the arrest, Mr. Orr was taken to Waterbury police headquarters where Defendants Shea and Schmaling interviewed him. Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 7-8; Defs.' L.R. 56(a)(2) Stmt. ¶¶ 7-8. Mr. Orr would not provide a statement implicating Mr. Robinson. Pl.'s L.R. 56(a)(1) Stmt. ¶ 9; Defs.' L.R. 56(a)(2) Stmt. ¶ 9. According to Mr. Orr, Detectives Shea and Schmaling wanted him to give a statement that the narcotics in the apartment belonged to Mr. Robinson, but Mr. Orr refused. *See* Compl. ¶ 12. Mr. Orr alleges that this prompted Schmaling to lie in his police report and implicate Mr. Orr in Mr. Robinson's drug offenses. *See id.* ¶ 17. Mr. Orr was charged with possession of one ounce or more of heroin, operating a drug factory, possession of narcotics with intent to sell, possession of less than one-half ounce of marijuana, and interfering with a search warrant. Defs.' Ex. A at 12. Those charges were later dismissed. Pl.'s Reply at 3.

## II. STANDARD OF REVIEW

This opinion reviews two motions: Plaintiff's motion for summary judgment and Plaintiff's motion for appointment of counsel. In addition, the Court reviews a prisoner's civil complaint for any frivolous or malicious claims. Those three standards follow.

First, under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion of it that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such

4

relief. Although detailed allegations are not required, the Complaint must include sufficient facts to afford Defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Second, to prevail on a motion for summary judgment, the moving party must establish that there are no genuine issues of material fact in dispute and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (explaining that mere existence of alleged factual dispute will not defeat summary judgment motion). The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving

5

party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

When deciding a motion for summary judgment, the Court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier*, 2007 WL 685181, at *7. In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Third, "[t]he [C]ourt may request an attorney to represent any person unable to afford

counsel." 42 U.S.C. § 1915 (e)(1). "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ." *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003). The Second Circuit has cautioned the district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989). Before the appointment of counsel is even considered, the indigent movant must establish that he is unable to obtain counsel and his claim must pass the test of likely merit. *Id.* at 173; *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). The Court must consider the merits of the claim and determine whether the movant's position "seems likely to be of substance." *Hodge*, 802 F.2d at 61. "[E]ven where the claim is not frivolous, counsel is often unwarranted where the [movant's] chances of success are extremely slim." *Cooper*, 877 F.2d at 171. If the movant's claim passes the test of likely merit, the Court should then consider other factors bearing on the need for appointment of counsel, including (1) the movant's ability to investigate the factual issues of the case, (2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, (3) the movant's apparent ability to present the case, and (4) the complexity of the legal issues. *Hodge*, 802 F.2d at 61-62.

## III. DISCUSSION

Mr. Orr asserts that he is entitled to summary judgment in his favor because there are no genuine issues of material fact with respect to his claims of false arrest, excessive force, and malicious prosecution against Defendants. Defendants claim that Mr. Orr has failed to state claims of excessive force or malicious prosecution and, alternatively, their opposition to the motion and supporting evidence show disputed issues of material fact with respect to all three claims. Because the Court has not yet issued its Initial Review Order, it will (1) review the

claims alleged in the Complaint for facial plausibility and (2) decide whether Mr. Orr is entitled to summary judgment on each claim. After considering those motions, the Court will decide whether to grant Mr. Orr's motion for appointment of counsel.

### A. Review Of Claims For Facial Plausibility And Plaintiff's Motion For Summary Judgment

For the following reasons, the Court finds that Mr. Orr has stated plausible claims of false arrest, excessive force, and malicious prosecution against Defendants. Those claims may proceed against Defendants Ferrucci, Schmaling, and Shea in their individual capacities for damages and in their official capacities for injunctive relief. All claims against the Waterbury Police Department and all claims for declaratory relief are dismissed. Mr. Orr is not entitled to summary judgment on any claim at this stage of the proceeding. His motion for summary judgment therefore is denied.

#### 1. False Arrest Claim

Mr. Orr first claims that Defendants arrested him without probable cause, in violation of his Fourth Amendment protection against unreasonable seizures. "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." *Coyle v. Coyle*, 153 Fed. App'x 10, 11 (2d Cir. 2005). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of

reasonable caution in the belief that an offense has been committed by the person to be arrested." *Colon v. Ludemann*, 283 F. Supp. 2d 747, 755 (D. Conn. 2003) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). "If there are no material facts in dispute 'as to the pertinent events and the knowledge of the officers,' the question of probable cause may be determined as a matter of law." *Id.* (quoting *Weyant*, 101 F.3d at 852). Probable cause is determined based on the totality of circumstances that existed at the time of arrest. *See Bernard v. United States*, 25 F. 3d 98, 102 (2d Cir. 1994).

The following facts are not in dispute: Defendants had a warrant to search the apartment and the person of Jermain Robinson. Def. 56(a)(2) Stmt. ¶ 1. Defendants did not have a warrant to arrest or search Mr. Orr. *Id.* ¶ 5. When Defendants searched Mr. Orr, they found only "a 'smoking pipe'" on his person. *Id.* ¶ 6.

In addition, these facts are in dispute: Defendants claim that they found the following items in Mr. Orr's constructive possession: $150.00 in cash, two brick-shape bundles wrapped in green plastic wrap containing 1,960 white glassine bags filled with brown powder that later tested positive for heroin, and a glass jar containing a plant that later tested positive for marijuana. Schmaling Aff. ¶¶ 8-9.

The Court considers first whether Mr. Orr has stated a plausible claim for false arrest to survive review under 28 U.S.C. § 1915A. ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"). The question here is whether Mr. Orr has stated a claim upon which relief may be granted—that is, whether the Complaint includes sufficient facts to provide Defendants with fair notice of Mr. Orr's claims

9

and his right to relief. *See Twombly*, 550 U.S. at 555-56. More specifically, the critical issue is, "tak[ing] all of the factual allegations in the complaint as true," whether he has pleaded sufficient facts to support a false arrest claim. *See id.* at 555.

Mr. Orr alleges that he was falsely arrested for possessing narcotics because he did not have narcotics on his person and he knew nothing about the narcotics in the apartment. Pl.'s L.R. 56(a)1 Stmt. ¶ 2; Compl. ¶¶ 1, 7, 10. His allegations state a plausible claim for relief that is not malicious or frivolous; this claim is best resolved at the summary judgment stage, and will not be dismissed under 28 U.S.C. 1915A.

Mr. Orr is not entitled, however, to summary judgment on this claim because several genuine issues of material fact remain. Defendants have presented evidence that they observed Mr. Orr participate in a drug transaction outside the apartment building before entering the apartment and arresting him. Defs.' Ex. A at 1, 7-8. They also assert that they discovered large quantities of drugs and cash within Mr. Orr's reach in the living room at the time of his arrest. Schmaling Aff. ¶¶ 8-9. Both of these facts are in dispute and bear directly on the issue of whether Defendants had probable cause to arrest Mr. Orr on October 6, 2016. Summary judgment in Mr. Orr's favor is therefore not warranted. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) ("The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### 2. Excessive Force Claim

Defendants argue that Mr. Orr has not stated a claim of excessive force against them and, alternatively, there are genuine issues of material fact with respect to any plausible excessive

force claim. Defs.' Mem. at 4-5; Defs.' L.R. 56(a)(2) Stmt. at 4 n.1. Mr. Orr counters that the allegations in his Complaint plausibly stated a claim for excessive force and that he is entitled to judgment on that claim. Pl.'s Reply at 1.

The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. *Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998); *see also Salaman v. DeJesus*, 05-cv-1608 (JBA), 2008 WL 160592, at *2 (D. Conn. Jan. 15, 2008) (applying Fourth Amendment to prisoner's claim that police officer used excessive force during arrest). To establish a Fourth Amendment excessive force claim, Mr. Orr must show that the force used by the officer was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, *id.* at 396, and it "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.

Mr. Orr has stated a plausible claim for relief based on excessive force. He alleges that he was sitting on the couch playing video games and smoking a cigarette when Defendants entered the apartment and shoved him off the couch, causing him to fall face-first on the floor. Compl. ¶¶ 1, 7. He also alleges that Defendants denied him medical care for his injuries. *Id.* ¶ 12. Construed in his favor, as this Court must, these allegations plausibly state a claim for excessive force under the Fourth Amendment. *See Twombly*, 550 U.S. at 555 (holding that a complaint need not contain "detailed factual allegations" as long as it contains more than labels and conclusions).

Mr. Orr, however, is not entitled to summary judgment on this claim because there still exist genuine issues of material fact. Defendants have presented evidence that, upon their entry into the apartment, Mr. Orr stood up from the couch and began to move towards the front door in an attempt to flee the scene. Defs.' L.R. 56(a)(2) Stmt. ¶ 4; Shea Aff. ¶ 8. This movement allegedly prompted Defendant Shea to shove him to the floor to prevent his escape. Defs.' L.R. 56(a)(2) Stmt. ¶ 4; Shea Aff. ¶ 9. Defendants have not indicated whether they admit or deny that they refused Mr. Orr medical care while at police headquarters. *See* Def.'s Answer ¶ 7, ECF No. 17. Because genuine issues of material fact exist regarding the circumstances of Mr. Orr's arrest, he is not entitled to summary judgment on his excessive force claim. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986) (explaining that summary judgment is appropriate where "no genuine issue as to any material fact" exists, due to "a complete failure of proof concerning an essential element of the nonmoving party's case").

### 3. Malicious Prosecution Claim

Defendants also argue that Mr. Orr has not stated a claim of malicious prosecution against them and, if he did, disputes over material facts preclude summary judgment on that claim. Def.'s Mem. at 4. Mr. Orr contends that he has, in fact, raised a claim of malicious prosecution and that, because the narcotics charges were dismissed, he is entitled to summary judgment on the claim. Pl.'s Reply at 1-2.

"A malicious prosecution claim under § 1983 borrows the elements of a malicious prosecution claim under state law." *El v. City of New York*, 14-cv-9055 (GHW), 2015 WL 1873099, *2 (S.D.N.Y. Apr. 23, 2015) (citing *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.

1992)). As the Supreme Court recognized in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), this Court can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the [C]ourt; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham*, 490 U.S. 386. To prevail on a malicious prosecution claim under Connecticut law, Mr. Orr must prove that: (1) Defendants initiated or procured institution of criminal proceedings against him; (2) the criminal proceedings have terminated in his favor; (3) Defendants acted without probable cause; and (4) Defendants "acted with malice, primarily for a purpose other than that of bringing an offender to justice." *See Burgess v. Wallingford*, 11-cv-1129 (TLM), 2013 WL 4494481, at *11 (D. Conn. May 15, 2013) (citing *Bhatia v. Debek*, 287 Conn. 397, 404 (2008)); *see also* Conn. Gen. Stat. § 53-39.

Construed in his favor, as the Court must, Mr. Orr has plausibly stated a malicious prosecution claim against Defendants. *See Sykes*, 723 F.3d at 403 (holding *pro se* complaints must be construed liberally). He alleged that Defendants instituted several narcotics charges against him, which were later dismissed, and arrested him without probable cause. Pl.'s Reply at 3. His allegation that Defendants filed charges against him after he refused to provide a statement implicating Mr. Robinson, though tenuous, supports an inference that Defendants prosecuted him for reasons other than his own criminal liability. *See* Pl.'s L.R. 56(a)1 Stmt. ¶ 9.

Mr. Orr is not entitled, however, to summary judgment on this claim. There remain genuine issues of material fact as to whether Defendants had probable cause to arrest Mr. Orr

and whether Defendants acted with malice when pursuing criminal charges against him. Thus, although the Court will exercise supplemental jurisdiction over this claim, Mr. Orr is not entitled to summary judgment.

### 4. Claims Against Defendants In Their Official Capacities

Mr. Orr does not indicate in his Complaint whether he is suing Defendants in their official capacities, their individual capacities, or both. To the extent he is suing Defendants in their official capacities for damages, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Any claim against Defendants in their official capacities for damages is hereby dismissed under 28 U.S.C. § 1915A.

### 5. Declaratory Relief

In addition to damages and injunctive relief, Mr. Orr seeks "[a] declaration that the acts and omissions of . . . [D]efendants violated [his] [Fourth] [A]mendment rights under the Constitution and laws of the United States." Mot. Summ. J. at 4. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Inst. Of Certified Pub. Accountants*, 10-cv-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). Mr. Orr's request for declaratory relief, however, concerns only past actions, specifically, the unlawful arrest on October 6, 2016. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See*

*Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (holding Eleventh Amendment bars declaration that state violated federal law in the past). His claim for declaratory relief therefore is dismissed.

### 6. Claims Against Waterbury Police Department

Mr. Orr is suing the Waterbury Police Department for the actions of its subordinates: Sergeant Ferrucci, Officer Schmaling, and Officer Shea. This claim thus essentially is a claim against the city of Waterbury. For the reason stated below, this claim must be dismissed.

"Congress did not intend municipalities to be held liable [under section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under section 1983 based on the actions of a public official, Mr. Orr must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Miron v. Town of Stratford*, 881 F. Supp. 2d 280, 284 (D. Conn. 2012) (to establish municipal liability, plaintiff must show that municipality violated federal right through municipal policy, custom, or practice or decision of municipal policymaker with final policymaking authority). A municipality cannot be held liable under section 1983 simply because one of its employees committed a tort. *Roe*, 542 F.3d at 36 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). In other words, Mr. Orr cannot establish municipal liability by pointing to a single act of unconstitutional conduct by the municipality's employee or subordinate. *Triano v. Town of*

*Harrison, N.Y.*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012). He must prove that the policy or custom at issue is "permanent and well-settled." *Id.*

In this case, Mr. Orr has not alleged that the Waterbury Police Department implemented an official policy that violated his constitutional rights. Although he challenges the validity of his arrest, which he claims was made without a warrant, he has not alleged sufficient facts showing that the city of Waterbury has a well-established policy of arresting individuals without justification. Mr. Orr's claims against the Waterbury Police Department therefore are dismissed.

### B.     Motion To Appoint Counsel

On August 25, 2017, Mr. Orr moved for the appointment of *pro bono* counsel to represent him in this matter. Mot. to Appoint Counsel, ECF No. 18. He claims that he is indigent and has made several efforts to obtain counsel on his own with no success. *Id.* Specifically, Mr. Orr asserts that he has contacted several law firms requesting representation, including the Inmate Legal Aid Program. *Id.* at 4-5.

At this stage of the proceeding, several of Mr. Orr's claims have survived the Court's initial review under 28 U.S.C. 1915A, and will proceed to the summary judgment or trial stages of the litigation. The Court determines that his claims are sufficiently meritorious to warrant the appointment of *pro bono* counsel, so that counsel may conduct discovery on Mr. Orr's behalf and represent him in the later stages of the proceeding.  The motion for appointment of counsel therefore is granted.

## IV. CONCLUSION

For the foregoing reasons:

(1) Mr. Orr's claims for false arrest, excessive force, and malicious prosecution may proceed against Defendants Ferrucci, Schmaling, and Shea in their individual capacities for damages. All claims against the Waterbury Police Department are hereby **DISMISSED**. All claims for declaratory relief and for damages against Defendants in their official capacities are **DISMISSED**.

(2) Mr. Orr's motion for summary judgment, ECF No. 11, is **DENIED**. Mr. Orr's motion for appointment of counsel, ECF No. 18, is **GRANTED**.

(3) Discovery, under Fed. R. Civ. P. 26-37, shall be completed by August 10, 2018. Discovery requests need not be filed with the Court. All dispositive motions shall be filed by October 12, 2018.

SO ORDERED at Bridgeport, Connecticut, this 8th day of February, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE