# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
| --- | --- |
| ANTHONY ORR,<br>     *Plaintiff*,<br><br>     v.<br><br>DANIEL FERRUCCI, JEFFREY<br>SCHMALING, AND KEITH SHEA,<br>     *Defendants.* | No. 3:17-cv-788 (VAB) |

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Anthony Orr ("Plaintiff") filed this lawsuit under 42 U.S.C. § 1983 against Sergeant Daniel Ferrucci ("Sgt. Ferruci"), Officer Keith Shea ("Officer Shea"), and Officer Jeffrey Schmaling ("Officer Schmaling"), (collectively the "Defendants") of the Waterbury Police Department, for the alleged use of excessive force during the execution of a search warrant.

Defendants have moved for summary judgment.

For the reasons that follow, their motion is **GRANTED IN PART** and **DENIED IN PART.**

Summary judgment will be granted on the excessive force claims brought against Officer Schmaling and Sgt. Ferrucci, the deliberate indifference claims brought against Officers Shea and Schmaling, and the false arrest and malicious prosecution claims brought against all of the Defendants.

Summary judgment is denied on the excessive force claim against Officer Shea and that claim will proceed to trial.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

On October 6, 2016, a surveillance officer allegedly saw an individual, later identified as Mr. Orr, leave 119 Angel Drive, Apartment E, in Waterbury, Connecticut, engage in a drug sale, and then return to that address. Defendants' Statement of Material Facts, ECF No. 69-9 ¶ 18 (July 5, 2017) ("Defs.' SMF").

Keith Shea, a police officer with the Waterbury Police Department, Plaintiff's Rule 56(a)(2) Statement, ECF No. 79 ¶ 1(Sept. 30, 2019) ("Pl.'s R. 56(a)(2)"), and Jeffrey Schmaling, who has worked at the Waterbury Police Department since January 7, 2011, and currently as a detective, *id*. at 6, learned about the surveillance officer's observations, before participating in the execution of a search and seizure warrant for 119 Angel Drive, Apartment E in Waterbury, Connecticut. *Id*.; Defs.' SMF ¶ 4.

Later that same day, Mr. Orr, who allegedly had been sitting on the couch in the living room playing a video game, and smoking a cigarette, allegedly heard a loud bang and the shout of "Police!" Pl.'s R. 56(a)(2). ¶¶ 46-49. Jermaine Robinson, who allegedly sat opposite to Mr. Orr on the couch, allegedly ran after hearing the words "search warrant!" *Id*. ¶ 50. An officer allegedly ran past Mr. Orr to catch Mr. Robinson. *Id*.

When Officer Shea entered the apartment, he allegedly saw Mr. Orr sitting on a couch in the living room, near a table with a plastic bag with two brick-shaped bundles wrapped in green plastic wrap, which Officer Shea thought was heroin. *See* Pl.'s R. 56(a)(2) ¶ 6 (Officer Shea allegedly recognized the bundles as heroin, although Mr. Orr denies being familiar with the wrapped bundles). Officer Shea also allegedly saw a glass jar containing what he thought might be marijuana. *Id*. ¶ 7; Defs.' SMF ¶ 8. According to Officer Shea, Mr. Orr appeared to stand up

and begin to run. Defs.' SMF ¶ 10. Officer Shea then pushed Mr. Orr to the floor to prevent him from escaping. Defs.' SMF ¶ 11. Because of the presence of drugs, Officer Shea worried about whether Mr. Orr was armed. *Id*. ¶ 9. After Mr. Orr was on the ground, Officer Shea placed Mr. Orr in handcuffs. *Id*. ¶ 12. A pipe was later found in his possession. *Id*. ¶ 53.

In contrast, Mr. Orr claims that he remained seated on the couch, and watched the police officers arrest Jermaine Robinson. Pl.'s R. 56(a)(2) ¶¶ 46-51.[1]

Officer Schmaling also helped execute the search and seizure warrant. *Id*. ¶ 17. He allegedly never entered the apartment, but remained outside in an unmarked vehicle, until after both Mr. Orr and Mr. Robinson had been arrested. *Id*. ¶ 21; Defs.' SMF ¶ 20. By the time he entered the apartment, Mr. Orr allegedly was seated on the couch and in handcuffs. Pl.'s Rule 56(a)(2) ¶ 21; Defs.' SMF ¶ 21. Officer Schmaling wrote a Case/Incident Report of the execution of the search and seizure warrant. Pl.'s Rule 56(a)(2) ¶ 22. He spoke with officers, including Officer Shea. *Id*. ¶ 23. Officer Shea reported that he placed Mr. Orr under arrest, after first pushing him to the ground and placing him in handcuffs. *Id*. Mr. Orr contests the accuracy of the report because it fails to state that Mr. Orr was seated during his arrest. Pl.'s Rule 56(a)(2) ¶ 24.

Mr. Orr claims an assault by Officer Shea. In his view, Officer Shea hit him in his mid-back and spine, while he was seated, *id*. ¶¶ 28-30, without warning, causing him to fall forward and hit his face with his legs. *Id*. ¶ 31; Defs.' SMF ¶¶ 31-32. The event happened fast, taking a matter of seconds to occur. Pl.'s Rule 56(a)(2) ¶ 43. He "felt like a 'throb, throb, throb, throb, throb, throb' and it was like a spasm and the pain did not go anywhere else other than the area of his back." *Id*. ¶ 81. When he fell, he received a bruise, which he did not notice until the next

---

[1] The parties also contest whether Mr. Orr requested medical attention and whether Officer Shea or Officer Schmaling were aware of any injuries requiring medical attention. *Id*. ¶¶ 12-14.

day. *Id*. ¶ 36. He recalls the dull ache, but never got to see the bruise because he did not have access to a mirror. *Id*. ¶ 37.

According to Mr. Orr, Sgt. Ferrucci was in the living room and oversaw the arrest of Mr. Robinson. *Id*. ¶ 60.

Mr. Orr admits that he only saw Officer Schmaling at the Waterbury Police Department. *Id*. ¶ 55. He identified Officer Schmaling as being involved because Officer Schmaling wrote the police report and spoke to him at police headquarters. *Id*. ¶ 54. Mr. Orr also admits that he never spoke with Sgt. Ferrucci, but found his name on Officer Schmaling's report, listed as Officer Schmaling's supervisor. *Id*. ¶ 56.

While at the Waterbury Police Department, Mr. Orr acknowledges he never requested a medical evaluation while meeting with the officers or during the booking process. *Id*. ¶ 63. The police officers allege that Mr. Orr admitted a level of intoxication of 6 on a scale from 1-10 and that he was "function[ing] but high." *Id*. ¶ 67. Mr. Orr denies having made these comments. *Id*.

On October 7, 2016, Mr. Orr arrived at the New Haven County Correctional facility, where he remained for eight or nine months. *Id*. ¶ 38. While at New Haven Correctional Center, Mr. Orr allegedly sought medical treatment on the second or third day of being there. *Id*. ¶¶ 39-40; Defs.' SMF ¶ 40. He allegedly recalls the pain as a dull ache. Pl.'s Rule 56(a)(2) ¶ 64.

Although the charges in connection to the October 6, 2016 search against Mr. Orr were dismissed, Mr. Orr received a five-year prison sentence for violating the terms of his probation from an unrelated incident. *Id*. ¶ 65.

## B. Procedural History

On May 15, 2017, Sgt. Ferrucci, Officer Schmaling, Officer Shea, and the Waterbury Police Department removed this case from Connecticut Superior Court. Notice of Removal, ECF

No. 1 (May 15, 2017); *see* Notice of Pending Motions, ECF No. 3 (May 15, 2017); Notice of Statement of Joseph A. Mengacci, ECF No. 4 (May 15, 2017).

On June 14, 2017, Mr. Orr moved for summary judgment. Mot. for Summary Judgment, ECF No. 11 (June 14, 2017).

On July 5, 2017, Defendants responded. Mem. in Opp., ECF No. 14 (July 5, 2017); Response to Pl.'s Local Rule 56(a)1 Statement, ECF No. 13 (July 5, 2017); Corrected Response to Pl.'s Local Rule 56(a)1 Statement, ECF No. 15 (July 5, 2017); Second Corrected Response to Pl.'s Local 56(a)1 Statement, ECF No. 16 (July 5, 2017); Answer, ECF No. 17 (July 6, 2017).

On August 25, 2017, Mr. Orr filed a motion to appoint counsel and a reply to Defendant's response to his motion for summary judgment. Mot. to Appoint Counsel, ECF No. 18 (Aug. 25, 2017); Reply, ECF No. 19 (Aug. 25, 2017).

On October 12, 2017, Defendants moved for an extension of time to respond to requests for admissions. Mot. for Extension of Time, ECF No. 20 (Oct. 12, 2017).

On October 13, 2017, the Court granted this motion. Order, ECF No. 21 (Oct. 13, 2017).

On November 9, 2017, Defendants filed a second motion for an extension to respond to requests for admissions and a motion for an extension of time for discovery and filing dispositive motions. Mot. for Extension of Time, ECF No. 23 (Nov. 9, 2017); Mot. for Extension of Time, ECF No. 22 (Nov. 9, 2017). The Court granted both motions on November 10, 2017. Order, ECF No. 24 (Nov. 10, 2017); Order ECF No. 25 (Nov. 10, 2017).

On November 17, 2017, Mr. Orr filed an objection to the first motion for an extension of time to respond to requests for admissions (ECF No. 20). Obj. to Mot. for Extension of Time, ECF No. 26 (Nov. 17, 2017).

On January 10, 2018, Defendants filed another motion for an extension of time for discovery deadlines and for dispositive motions. Mot. for Extension of Time, ECF No. 27 (Jan. 10, 2018).

On January 11, 2017, the Court granted the extension. Order, ECF No. 28 (Jan. 11, 2017).

On January 18, 2018, Mr. Orr filed a motion for an extension of time to file a response, object to interrogatories, and file other discovery documents. Mot. for Extension of Time, ECF No. 29 (Jan. 18, 2018).

On February 2, 2018, the Court granted the extension to respond to respond to discovery requests. Order, ECF No. 30 (Feb. 2, 2018).

On February 8, 2018, the Court denied Mr. Orr's motion for summary judgment and granted his motion to appoint counsel. Order, ECF No. 31 (Feb. 8, 2018).

On May 30, 2019, the Court conducted a post-discovery telephonic status conference. Minute Entry, ECF No. 68 (May 30, 2019).

On July 5, 2019, Defendants moved for summary judgment. Mot. for Summary Judgment, ECF No. 69-10 (July 5, 2019) ("Defs.' Mot. for Summary Judgment").

On July 29, 2019, both parties filed a consent motion for an extension of time to file a response to Defendants' motion for summary judgment and to file a reply to Plaintiff's response. Consent Mot. for Extension of Time, ECF No. 70 (July 29, 2019).

On July 30, 2019, the Court granted this motion. Order, ECF No. 71 (July 29, 2019).

On August 21, 2019, the parties submitted a second motion for extension of time to file a response to Defendants' motion for summary judgment and to file a reply to Plaintiff's response. Second Consent Mot. for Extension of Time, ECF No. 73 (Aug. 21, 2019).

On August 22, 2019, the Court granted this motion. Order, ECF No. 74 (Aug. 22, 2019).

The parties twice more requested extensions of time, and the Court again granted them. *See* Fourth Mot. for Extension of Time, ECF No. 75 (Sept. 5, 2019); Order, ECF No. 76 (Sept. 7, 2019); Fifth Mot. for Extension of Time, ECF No. 77 (Sept. 19, 2019); Order, ECF No. 78 (Sept. 21, 2019).

On September 30, 2019, Plaintiff filed a memorandum in opposition to Defendant's motion for summary judgment. Pl.'s Opposition, ECF No. 79 (Sept. 30, 2019) ("Pl.'s Opp.").

On October 22**,** 2019, the Court heard oral argument on the pending motion. Minute Entry, ECF No. 80 (Oct. 22, 2019).

## II.     STANDARD OF REVIEW

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving

party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

When deciding a motion for summary judgment, the court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier*, 2007 WL 685181, at *7. In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III. DISCUSSION[2]

---

[2] At the motion hearing on October 22, 2019, the parties agreed that the case now only involved two claims: an excessive force claim against Officer Shea and a deliberate indifference claim against both Officer Shea and Officer Schmaling. The excessive force claim against Sgt. Ferrucci therefore is dismissed.

## A. The Excessive Force Claims

The Fourth Amendment prohibits the use of excessive force during arrests. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865 L.Ed.2d 443 (1989). Determining whether the force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotations and citations omitted). In making that determination, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

It is an objective standard that considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396-97; *see also Elliott v. Cty. of Monroe*, 115 Fed. App'x 497, 498 (2d Cir. 2004) (a reasonableness inquiry "must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether she actively resisted the arrest"). As a result, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)).

Officer Shea contends his use of force was not excessive and did not violate Mr. Orr's constitutional rights. He relies on the surveillance that occurred earlier in the day before the execution of the warrant and his own observations of Mr. Orr to justify the force used. Mot. for Summary Judgment at 8-9; Defs.' SMF ¶¶ 5-9.

Sgt. Ferrucci moves for summary judgment because Mr. Orr has not produced any

evidence that he engaged in the use of excessive force. Mot. for Summary Judgment at 2. Similarly, Officer Schmaling moves for summary judgment because Mr. Orr has not produced any evidence that he used excessive force or was in a place to intervene. *Id.* at 1-2; *see also* Defs.' SMF ¶ 57.

Mr. Orr contends that Officer Shea's use of force is a fact-specific inquiry and a genuine issue of fact remains as to whether the force Officer Shea used was reasonable. Pl.'s Opp. at 5-6. In his view, there are "no other witnesses able to provide evidence" and discrepancies persist, resulting in a material dispute of fact best suited for a jury. *Id.* at 7.

The Court agrees, at least with respect to Officer Shea.

Because this is a fact-intensive inquiry, the determination of objective reasonableness of the use of force used by Officer Shea must be made by a jury. *See Hemphill v. Schott*, 141 F.3d 412, 417 (2d. Cir. 1998) (finding that the question of whether the use of potentially deadly force was reasonable remained in dispute when two of the factors were contested). Here, there is conflicting testimony about what threat, if any, Mr. Orr posed, and what force, if any, was necessary for Officer Shea to use during Mr. Orr's arrest. *Compare* Pls.' Opp. at 6 (summarizing Mr. Orr's contention that when the police entered the house/apartment, he remained seated and watched the arrest of Mr. Robinson, until a police officer struck him from behind, and he did not attempt to flee); *with* Mot. for Summary Judgment at 9-10 (summarizing Officer Shea's position that his training and experience suggested that Mr. Orr might have a weapon and be a threat to both officers and civilians and that, even if Mr. Orr were seated, the use of force would be objectively reasonable). As a result, the excessive force claim against Officer Shea will not be dismissed.

There is no evidence in this record, however, from which a reasonable jury could find

that either Officer Schmaling or Detective Ferrucci used excessive force. Significantly, there is no evidence in the record that either used any force at all against Mr. Orr. As a result, the excessive force claims against Officer Schmaling and Detective Ferrucci will be dismissed.

## B. Qualified Immunity

Even if a reasonable jury could find that Officer Shea had violated Mr. Orr's Fourth Amendment rights and used excessive force, Officer Shea may still be entitled to summary judgment on qualified immunity grounds. *See generally Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (affirming district court's summary judgment ruling that, though defendants arrested plaintiff without probable cause and conducted an unreasonable search under the Fourth Amendment, defendants were nevertheless entitled to summary judgment on qualified immunity grounds).

"Qualified immunity protects federal and state officials from money damages and unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)). It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Coollick*, 699 F.3d at 219.

When a court analyzes the question of whether public officials are entitled to qualified immunity, there are two potential steps or questions that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d 382, 388-89 (2d Cir. 2013). First, the court considers whether "the facts show

that the officer's conduct violated plaintiff's constitutional rights." *Id*. Second, if the answer is no, "further inquiry is unnecessary because [ ] there is no viable constitutional claim," but if the answer is yes, "or at least not definitively no," the court may move on to the second question "was the right clearly established at the time of defendant's actions?" *Id*.

Courts need not consider these two questions in order, and may consider the latter question first, which may be "particularly appropriate where the former turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct was not objectively unreasonable in light of existing law." *Id*. (citing Pearson v. Callahan, 555 U.S. 223 (2009)) (internal quotation marks omitted).

Also, although the Fourth Amendment prohibits the use of excessive force in effecting an arrest, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[.]" *Graham*, 490 U.S. at 396. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243-44 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"In the Second Circuit, qualified immunity analysis consists of a three-step inquiry examining whether there is an alleged violation of a constitutional right, whether the right was clearly established at the time of the conduct, and – if the right was clearly established – whether the defendants' actions were objectively reasonable." *Palmierei v. Kammerer*, 690 F.Supp.2d 34, 36 (D. Conn. 2010) (quoting *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003).

"[T]he clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 149 S.Ct. 500, 501 (2019) (finding that defining the clearly established as 'the right

to be free of excessive force' was too general). It is a "constitutional right[ ] of which a reasonable person would have known" and "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam) (internal citations and quotations omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarify to have placed the constitutional question at issue beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (citing *Ashcroft v. al-Kidd*, 653 U.S. 731, 735 (2011)).

Officer Shea argues that, it was "objectively reasonable for him to believe that Mr. Orr had and appeared to be engaging in the possession and/or sale of drugs and could likely be in possession of a weapon." Mot. for Summary Judgment at 14. In Officer Shea's view, given the underlying circumstances, "no reasonable officer would have believed that the use of force employed upon [Mr.] Orr was unlawful." *Id*. at 15; *see also* Defs.' SMF ¶¶ 5-12.

Mr. Orr argues that qualified immunity should be denied because Officer Shea knew he was violating a clearly established constitutional right when he allegedly used excessive force to arrest Mr. Orr and that it is a factual issue to be decided at trial. Pl.'s Opp. at 11.

The Court agrees.

The Supreme Court has made that clear that the use of force during an arrest is not necessarily unreasonable. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it[.]"). As a result, if "the circumstances are in dispute, and 'contrasting accounts…present factual issues as to the degree of force actually employed and its reasonableness,' a defendant is not entitled to a judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (citing *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001)). The same applies to motions for summary judgment. *See Kramer v. City of Danbury*, No. 3:07cv01749 (DJS), 2010 WL 11661294, at *11 (D. Conn. Jan. 22, 2010) (denying a motion for summary judgment when "whether the officers reasonably believed that the force utilized was reasonable turns more on whether the circumstances as they believed them to be warranted the use of force at all…" was at issue).

The prohibition of excessive force while effectuating an arrest is clearly established. *See Outlaw v. City of Hartford*, 884 F.3d 351, 364 (2d Cir. 2018) ("That the law prohibits excessive force when using force to make an arrest is neither a recent nor surprising development.") (internal citations omitted)); *Mickle*, 287 F.3d at 122 (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited") (internal citations and quotation marks omitted)); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest.").

The next inquiry is whether Officer Shea reasonably used force in these circumstances. Accepting Mr. Orr's version at this stage of the proceedings, as this Court must at this stage of the case, Officer Shea struck him from behind, while he was seated, not behaving aggressively, and not fleeing, and then Officer Shea forced his knee into Mr. Orr's back, when Mr. Orr was not resisting arrest. At the time of Mr. Orr's arrest, the law was clearly established that if, in fact, Officer Shea struck Mr. Orr from behind in order to arrest him, and Mr. Orr was not fleeing or

otherwise resisting, then this could have been excessive force.  *See Rogoz v. City of Hartford*, 796 F.3d 236 (2d Cir. 2015) "[N]o officer in 2009 could reasonably have believed it permissible under the Fourth Amendment to jump on the back of a prone and compliant suspect gratuitously, with sufficient force to break his spine and rib."); *Mickle*, 297 F.3d at 122 (district court's finding of judgment as a matter of law for the defendant was overturned where a police officer entered the plaintiff's locked home, grabbed her from behind without warning, and dragged her to jail in handcuffs).

Officer Shea has a different view of the events, a version which might make qualified immunity appropriate. But "[i]f there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories." *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (citations and internal quotation marks omitted); *see Outlaw*, 884 F.3d at 368 ("The jury may be asked to make its findings by answering special interrogatories."); *see also Lore*, 670 F.3d at 162 ("[Q]uestions as to what situation confronted [the city's corporation counsel], what acts he performed, and his motivation in performing those acts were questions of fact; they were to be–and were–answered by the factfinder.").

Once those factual issues are determined, this Court will determine the legal question of whether Officer Shea is entitled to qualified immunity.  *See id.* ("We conclude that although the district court properly put the fact questions to the jury, it erred in having the jury decide the ultimate legal question, in light of the facts established, of whether Guy, in his personal capacity, was entitled to qualified immunity.  That legal question should have been answered by the court.").

Accordingly, Mr. Orr's excessive force claim against Officer Shea will not be dismissed

on qualified immunity grounds, at least, not at this time.

## C. Deliberate Indifference

"Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Snipes v. DeTella*, 95 F.3d 586, 590–91 (7th Cir. 1996)). Deliberate indifference to a serious medical need becomes an Eighth Amendment violation when an official both knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin* (*Hathaway II*), 99 F.3d 550, 554 (2d Cir. 1996) (citing *Hathaway v. Coughlin* (*Hathaway I*), 37 F.3d 63, 66 (2d Cir. 1994)).

Objectively, "the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Id.* (citing *Hathaway I*, 37 F.3d at 66). The Second Circuit has also recognized that "the inability to engage in normal activities" may form the basis for a cognizable claim regarding inadequate medical care. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (double vision and loss of depth perception due to prior head injury may not inevitably entail pain, but can "readily cause a person to fall or walk into objects, and Koehl alleged that he has experienced such occurrences, and has suffered injuries as a consequence," and thus are sufficient to allege objective element of deliberate indifference claim).

Subjectively, "the charged official must act with a sufficiently culpable state of mind," *Hathaway II*, 99 F.3d at 554 (citing *Hathaway I*, 37 F.3d at 66), meaning that the charged official must act or fail to act while "actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Officer Shea seeks to dismiss Mr. Orr's deliberate indifference claim because Mr. Orr "cannot demonstrate that he was suffering from a serious injury, condition or a serious medical need." Defs.' Mot. for Summary Judgment at 19-20; *see also* Defs. SMF ¶¶ 13-15, 63

In support of his claim, Mr. Orr argues that his complaints of persistent discomfort and reliance on medication, medication which he needs to take twice a day, are sufficient. Pl.'s Opp. - Exhibit A at 18-19.

The Court disagrees.

"[A] serious medical need exists where the failure to treat a prisoner's condition could result in further significant injury or unnecessary and wanton infliction of pain." *Smith*, 316 F.3d at 187 (citing *Harrison*, 219 F.3d at 132) (internal quotations omitted)). In *Chance v. Armstrong*, the court set forth a list of non-exhaustive factors relevant to determining whether a serious medical condition exists, which include: "[1] whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of treatment;' [2] whether the medical condition significantly affects daily activities; and [3] 'the existence of chronic and substantial pain.'" *Chance*, 143 F.3d at 702 (citations omitted). The condition must be urgent in "that it may result in degeneration or extreme pain." *Id*. (internal citations and quotations omitted). A failure to treat such a condition "could result in further significant injury or unnecessary and wanton infliction of pain.'" *Smith*, 316 F.3d at 187 (citing *Harrison*, 219 F.3d at 132) (internal quotations omitted). "Back conditions, like other medical conditions, vary

significantly in severity." *Farady v. Lantz*, No. 3:03CV1520(SRU), 2005 WL 3465846, at \*5 (D. Conn. Dec. 12, 2005).

At this stage of the case, in order to proceed to trial on his deliberate indifference claim, Mr. Orr must have admissible evidence of both his serious medical condition and a deliberate failure to treat it. *See Raskin v. Wyatt Co*., 125 F.3d 55, 66 ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.") (citing *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)); *eCommission Solutions, LLC v. CTS Holdings, Inc.*, No. 18-1672-cv, 2019 WL 2261457, at \*2 (2d. Cir. May 28, 2019) (finding that "the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial") (citations omitted)); *Scheiner v. Wallace*, No. 93 CIV. 0062 (RWS), 1996 WL 633418, at \*8 (S.D.N.Y. Oct. 31, 1996) (granting a motion for summary judgment where Plaintiffs introduced admissible evidence that did not create a genuine issue of material fact). Because Mr. Orr lacks admissible evidence of a serious medical condition, his deliberate indifference claim fails.

Mr. Orr allegedly suffered an abrasion to his face at the time of his arrest and allegedly continues to have mid-back pain as a result, *see* Pl.'s Opp. at 3, but he offers no medical testimony or affidavit to support this claim. He refers to his own testimony to support his ongoing pain and medical condition. Pl.'s Opp. - Exhibit A at 18-19; 20. After Motrin 800 stopped working, a doctor allegedly prescribed him Neurontin and Gabapentin, which he takes twice a day. *Id*. at 18-19. Another female physician also allegedly told him "that the force of the arrest 'activated neuropathy in [his] spine.'" *Id*. at 20.

But Mr. Orr cannot rely simply on his own statements and the affidavit of other inmates, none of whom are medical professionals, to create a triable issue of fact as to his serious medical

need. *See Green v. Shaw*, No. 3:17-cv-00913 (CSH), 2019 WL 1427448, at *6 (D. Conn. Mar. 29, 2019), appeal docketed, No. 19-847 (2d Cir. Apr. 3, 2019) ("While Green has presented medical evidence showing that he underwent surgery in 2017 to address an anal fissure, he presents no evidence showing that this condition was present in the summer of 2015."); *see also Charter Practices Int'l, LLC v. Robb*, No. 3:12-cv-1768 (RNC), 2017 WL 4366717, *5 (D. Conn. Sept. 30, 2017) (nonmoving party cannot rely on self-serving affidavit alone to create triable issue of fact); *see also Fuller v. Lantz*, 549 Fed. App'x 18, 20 (2d Cir. 2013) (finding that "lay statements are insufficient to create a genuine dispute of fact as to the propriety of a medical diagnosis").

Although Mr. Orr can testify to his own pain, he cannot testify as to the source of this pain, without testimony from someone with medical expertise. *See U.S. v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("If the opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701."). In this record, there are no medical records, affidavits of treating physicians, prescriptions, or diagnoses that support Mr. Orr's allegations. And without expert testimony that any current medical condition of Mr. Orr is linked to the underlying arrest, any testimony about his current medical condition is not relevant to this case and therefore, is not admissible. Fed. R. Evid. 401; *see also Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (finding the district court abused its discretion in admitting testimony based on experience and specialized knowledge as lay testimony).

For similar, but also different reasons, while Mr. Orr claims that an appropriate medical expert told him "that the force of the arrest 'activated neuropathy in [his] spine,'" Pl.'s Opp. – Exhibit A at 20, this testimony also is not admissible, and therefore is insufficient to create a

genuine issue of material fact.

First of all, this testimony is not directly from a physician, but from Mr. Orr, making it inadmissible as hearsay. *See Davis v. Velez*, 797 F.3d 192, 200 (2d Cir. 2015) ("Hearsay, a statement by a declarant 'not ma[d]e while testifying at the current trial or hearing' and 'offere[ed] in evidence to prove the truth of the matter asserted…is generally not admissible…"); *Gaither v. Stop & Shop Supermakert Co. LLC*, 84 F.Supp.3d 113, 123 n. 11 (D. Conn. 2015) ("Because the statement is inadmissible hearsay when offered to prove the truth of the matter asserted, the Court does not rely on it in denying summary judgment.").

Second, even if Mr. Orr had produced an affidavit with this physician swearing to this testimony under oath, this testimony alone would not be admissible. The physician still would have to provide medical support for any opinion that Mr. Orr's current or past pain is reasonably linked to the underlying arrest. *See Garcia*, 413 F.3d at 215 (requiring testimony to satisfy the requisites of Rule 702). That testimony, however, is lacking in this record.

As a result, although Mr. Orr claims that Officer Shea and Officer Schmaling ignored his complaints that Officer Shea's strike to his back severely injured him and failed to get him necessary medical treatment, Pl.'s Opp. at 12; *see also* Defs.' Motion for Summary Judgment Exhibit 7 at 31 ("Directly I told him, 'You hit me in my back, I want to see a doctor,' and he said, 'Don't resist.'"), creating a genuine issue of material fact as to that issue,[3] the absence of admissible evidence on Mr. Orr's allegedly serious medical condition forecloses this claim. *See Pierce v. Pillai*, No. 3:14-cv-1477 (VLB), 2016 WL 6774225, at *4 (D. Conn. Nov. 15, 2016) (finding that the plaintiff failed to submit any admissible evidence when he exclusively relied on his own statements about the medical treatment he would receive); *Johnson v. Goord*, No. 01

---

[3] Defendants, however, deny that Mr. Orr made this request. Defs.' Mot. for Summary Judgment at 16.

Civ. 9587PK, 2004 WL 2199500, at *12 (S.D.N.Y. Sept. 29, 2004) ("In the absence of a note or record from a prescribing physician or other admissible evidence that a doctor's order was contravened, plaintiffs' vague hearsay statements are not sufficient to create a genuine issue of material fact.").

In any event, under the subjective component of his deliberate indifference claim, Mr. Orr also must have admissible evidence that the Defendants knew of and disregarded an excessive risk to inmate health and safety. *See Smith*, 316 F.3d at 185 ("[T]he charged official must act with a sufficiently culpable state of mind.") (citing *Hathaway I*, 37 F.3d at 66). The Defendants must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. There is nothing in this record, however, to suggest what medical treatment should have been provided, such that "his diagnosis and treatment were so devoid of sound medical basis or far afield of accepted professional standards as to raise an inference of deliberate indifference." *Green*, 2019 WL 1427448 at *8.

Accordingly, Mr. Orr's deliberate indifference claim against Officers Shea and Schmaling will be dismissed.

### D. False Arrest and Malicious Prosecution

Because Mr. Orr withdraws his claims for false arrest and malicious prosecution, Pl.'s Opp. at 2 n.1, those claims also will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

Summary judgment will be granted on the excessive force claims brought against Officer

Schmaling and Sgt. Ferrucci, the deliberate indifference claims brought against Officers Shea and Schmaling, and the false arrest and malicious prosecution claims brought against all of the Defendants.

Summary judgment is denied on the excessive force claim against Officer Shea, and that claim will proceed to trial.

The Clerk of Court is respectfully requested to enter judgment in favor of Officer Schmaling and Sgt. Ferrucci, and to amend the caption accordingly to reflect the only defendant as Officer Shea.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of November, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE